# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Frederick J. Kapala | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 11 C 50155 | **DATE** | 6/24/2011 |
| **CASE TITLE** | Crawford & Company Medical Benefit Trust v. Repp et al. | | |

**DOCKET ENTRY TEXT:**

Hearing held on plaintiff's motion for temporary restraining order. Plaintiff's motion for temporary restraining order is granted as to Repp and denied as to the Law Offices of Jim Black. All parties shall appear for hearing on plaintiff's motion for preliminary injunction on July 5, 2011 at 3:30 p.m. The motion for preliminary injunction remains pending as to both Repp and Black. Enter Order.

■[ For further details see text below.]   Docketing to mail notices.

1:30

## STATEMENT

On May 25, 2011, plaintiff, Crawford & Company Medical Benefit Trust, filed a five count complaint against defendants, Robert Repp and the Law Office of Jim Black (Black), alleging that after Repp received two workers' compensation settlements for work-related injuries, he failed to reimburse plaintiff for medical payments regarding those same injuries. Plaintiff now moves the court for a temporary restraining order (TRO) pursuant to Federal Rule of Civil Procedure 65(b) requiring that defendants retain and preserve the amount of funds received by defendants pursuant to the settlement of Repp's workers' compensation claims to which the plaintiff has a right to reimbursement.

### I. BACKGROUND

In his complaint, plaintiff alleges the following facts. Plaintiff is a self-funded ERISA plan that provides healthcare benefits to certain employees of Crawford & Company, including Repp. On October 1, 2006, Repp injured his shoulder while working for his employer. Repp incurred bills for his medical treatment which were paid by plaintiff. Thereafter, Repp, through Black, filed a claim for benefits with the Illinois Workers' Compensation Commission (IWCC) (Case No. 09 WC 015092). On August 19, 2010, Repp settled this claim for $65,000.

On September 1, 2007, Repp injured multiple parts of his body while working for his employer. Plaintiff paid medical bills for the treatment of the injuries on behalf of plaintiff. On February 7, 2008, Repp, through Black, filed a claim for benefits with the IWCC (Case No. 08 WC 511). On March 11, 2011, Repp settled this claim for $120,000.

Repp did not reimburse plaintiff after either of his settlements. According to the plaintiff's Summary Plan Description, a participant who has a medical injury, illness or condition for which a third party is liable, and who recovers from such third party, must repay plaintiff for the medical expenses plaintiff paid. According to plaintiff, Repp currently owes plaintiff $50,314.89. Plaintiff alleges that the settlement funds have been

| STATEMENT |
|---|

distributed to Repp and Black and are currently being held by them. Plaintiff further alleges that Black has advised Repp not to reimburse plaintiff from these funds.

## II. ANALYSIS

The standard for the issuance of a TRO is the same standard that is applied for the issuance of a preliminary injunction. The Little Tikes Co. v. Kid Station Toys, Ltd., No. 08 C 1935, 2008 WL 1805379, at *3 (N.D. Ill. Apr. 18, 2008). "[A] preliminary injunction is an exercise of a very far-reaching power, never to be indulged in except in a case clearly demanding it." Girl Scouts of Manitou Council, Inc. v. Girl Scouts of the United States, Inc., 549 F.3d 1079, 1089 (7th Cir. 2008) (quotation marks omitted). The movant bears the burden of persuasion. Chi. Dist. Council of Carpenters Pension Fund v. K. & I Const., Inc., 270 F.3d 1060, 1064 (7th Cir. 2001). To obtain a preliminary injunction, a plaintiff must demonstrate (1) a likelihood that it will prevail on the merits of the lawsuit, (2) that it will suffer irreparable harm without injunctive relief, and (3) that there is no adequate remedy at law. Incredible Techs., Inc. v. Virtual Techs., Inc., 400 F.3d 1007, 1011 (7th Cir. 2005). "If the moving party fails to demonstrate any one of these three threshold requirements, the court must deny the injunction." Grace Christian Fellowship v. KJG Investments Inc., No. 07-C-0348, 2009 WL 2460990, at *5 (E.D. Wis. Aug. 7, 2009). "If these requirements are met, the court must then balance the degree of irreparable harm to the plaintiff against the harm that the defendant will suffer if the injunction is granted." Incredible Techs., 400 F.3d at 1011; see also Boucher v. Sch. Bd. of the Sch. Dist. of Greenfield, 134 F.3d 821, 824 (7th Cir. 1998). Plaintiff's motion only seeks a TRO and preliminary injunction concerning its claim in Count I.

### A. Repp

#### 1. Likelihood of Success on the Merits

Plaintiff "need only demonstrate at the preliminary injunction stage that it has a 'better than negligible' chance of succeeding on the merits so that injunctive relief would be justified." Ty, Inc. v. Jones Group, Inc., 237 F.3d 891, 897 (7th Cir. 2001). Plaintiff argues that it has a better than negligible chance of success on its ERISA claims against Repp. Plaintiff notified Repp of its motion by mail, but Repp has not filed a response to plaintiff's motion and failed to appear at the hearing on the motion.

Plaintiff alleges, and Repp does not dispute, that plaintiff was a plan participant and that the Plan states:

Subrogation

Immediately upon paying or providing any benefit under this plan, the plan shall be

subrogated to (stand in the place of) all rights of recovery a Covered Person has against any Responsible Party with respect to any payment made by the Responsible Party to a Covered Person due to a Covered Person's injury, illness, or condition to the full extent of benefits provided or to be provided by the plan.


Reimbursement

In addition, if a Covered Person receives any payment from any Responsible Party or Insurance Coverage as a result of an injury, illness, or condition, the plan has the right to recover from, and be reimbursed by, the Covered Person for all amounts this plan has paid and will pay as a result of that injury, illness, or condition, up to and including the full amount the Covered Person receives from any Responsible Party.


Constructive Trust

**STATEMENT**

By accepting benefits (whether the payment of such benefits is made to the Covered

Person or made on behalf of the Covered Person to any provider) from the plan, the

Covered Person agrees that if he or she receives any payment from any Responsible

Party as a result of an injury, illness, or condition, he or she will serve as a constructive trustee over the funds that constitutes such payment. Failure to hold such funds in trust will be deemed a breach of the Covered Person's fiduciary duty to the plan.

Lien Rights

Further, the plan will automatically have a lien to the extent of benefits paid by the plan for the treatment of the illness, injury, or condition for which the Responsible Party is liable. The lien shall be imposed upon any recovery whether by settlement, judgment, or otherwise related to treatment for any illness, injury, or condition for which the plan paid benefits. The lien may be enforced against any party who possesses funds or proceeds representing the amount of benefits paid by the plan including, but not limited to, the Covered Person, the Covered Person's representative or agent; Responsible Party; Responsible Party's insurer, representative, or agent; and/or any other source possessing funds representing the amount of benefits paid by the plan.

First-Priority Claim

By accepting benefits (whether the payment of such benefits is made to the Covered

Person or made on behalf of the Covered Person to any provider) from the plan, the

Covered Person acknowledges that this plan's recovery rights are a first priority claim

against all Responsible Parties and are to be paid to the plan before any other claim for the Covered Person's damages. This plan shall be entitled to full reimbursement on a first-dollar basis from any Responsible Party's payments, even if such payment to the plan will result in a recovery to the Covered Person which is insufficient to make the Covered Person whole or to compensate the Covered Person in part or in whole for the damages sustained. The plan is not required to participate in or pay court costs or attorney fees to any attorney hired by the Covered Person to pursue the Covered Person's damage claim.

As such, the plain language of the parties' agreement requires Repp to reimburse plaintiff "for all amounts this plan has paid and will pay as a result of that injury." ERISA § 502(a)(3) authorizes a civil action "by a participant, beneficiary, or fiduciary (A) to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this subchapter or the terms of the plan." 29 U.S.C. § 1132(a)(3); Admin. Comm. of Wal-Mart Stores, Inc. Assocs. Health & Welfare Plan v. Varco, 338 F.3d 680, 683 (7th Cir. 2003).

However, § 502(a)(3) provides only for equitable remedies, as such, to be successful, plaintiff must show it seeks equitable relief. See Varco, 338 F.3d at 683. In Great-West Life Annuity Ins. Co. v. Knudson, the proceeds of the settlement to which the Fund maintained it was entitled were not in the defendant's possession, but instead were in a Special Needs Trust. The Supreme Court held that the Fund was not seeking equitable relief under § 502(a)(3)(B) because it was not claiming restitution of particular funds that, "in good conscience, belong to petitioners, but that petitioners are contractually entitled to some funds for benefits that they conferred." 534

U.S. 204, 214 (2003).

In Sereboff v. Mid Atlantic Medical Services, Inc., however, the Supreme Court clarified that a reimbursement provision in a plan may create an equitable lien by agreement. 547 U.S. 356, 365 (2006). In that case, the Plan contained an "Act of Third Parties" provision, which "require[d] a beneficiary who 'receives benefits' under the plan for such injuries to 'reimburse [Mid Atlantic]' for those benefits from '[a]ll recoveries from a third party (whether by lawsuit, settlement, or otherwise).'" Id. at 359. The Court reasoned that in contrast to an equitable lien sought as a matter of restitution in Knudson, strict tracing of the funds to be recovered was not required for equitable lien by agreement. Id. at 365; see also Gutta v. Standard Select Trust Ins. Plans, 530 F.3d 614, 620 (7th Cir. 2008) (summarizing Sereboff). As such, where a plan provision in question specifically identifies a particular fund distinct from the defendant's general assets and a particular share of that fund to which the Fund was entitled, the claim to assert a lien on those funds is equitable. Sereboff, 547 U.S. at 365. In Gutta, the Seventh Circuit relying on Sereboff held that, in a case of an equitable lien by agreement, a plaintiff has a claim under § 502(a)(3) "even if the benefits paid the insured are not specifically traceable to the insured's current assets because of commingling or dissipation." Gutta, 530 F.3d at 621.

In this case, the Plan's reimbursement provision is extremely similar to the reimbursement provision in Sereboff and Gutta. Compare Gutta, 530 F.3d at 621. Here, too, there is an "equitable lien by agreement" between plaintiff and Repp, and that lien is not dependent on the ability to trace particular funds. Therefore, there is merit to plaintiff's ERISA claim against Repp.[1] As such, it is likely plaintiff will succeed on the merits.

## 2. Irreparable Harm

Harm is irreparable if it cannot be prevented or fully rectified by the final judgment after trial. Girl Scouts, 549 F.3d at 1089 (quotation marks omitted). In this case, plaintiff has presented the affidavit of Gloria Marshall, an employee of The Rawlings Company, that Repp advised her he would not reimburse the Plan and that if plaintiff took him to court "the money would be gone." Marshall avers that Repp told her "You can't squeeze blood out of a turnip."

Plaintiff argues that if the court does not institute a constructive trust on the res it will be dissipated by Repp. Certainly, plaintiffs will suffer irreparable harm if the payments made to Repp are further dissipated in a way that these funds or the proceeds therefrom are no longer able to be traced, in that the purpose of the equitable remedy sought (constructive trust and/or equitable lien) will be frustrated. See Trustees for Iron Workers St. Louis Dist. Council Pension Trust v. Edwards, No. 10-cv-73-DRH, 2010 WL 1418566, at *5 (S.D. Ill. April 7, 2010). Accordingly, due to the nature of the ERISA claim and evidence of Repp's threats that he will spend all the money, irreparable harm will occur without a temporary restraining order.

## 3. No Adequate Remedy At Law

As discussed above, plaintiff is entitled only to equitable relief under ERISA. The relief plaintiff seeks is specifically the funds Repp received as part of his settlements. Plaintiff seeks equitable relief in the form of a constructive trust or lien. Plaintiff argues a legal remedy would not be available under ERISA. The court agrees. Although plaintiff could bring a breach of contract action, it could not recover the specific "res" it seeks in Count I through that claim. See Edwards, 2010 WL 1418566, at *5.

## 4. Balancing Test

"In this second phase, the court, in an attempt to minimize the cost of potential error, must somehow balance the nature and degree of the plaintiff's injury, the likelihood of prevailing at trial, the possible injury to the defendant if the injunction is granted, and the wild card that is the public interest." Girl Scouts, 549 F.3d at 1086 (quotation marks omitted). "Specifically, the court weighs the irreparable harm that the moving party would endure without the protection of the preliminary injunction against any irreparable harm the nonmoving party would suffer if the court were to grant the requested relief." Id. "The more likely the plaintiff is to win,

the less heavily need the balance of harms weigh in his favor; the less likely he is to win, the more need it weigh in his favor." Id.

In this case, plaintiff has presented evidence that Repp threatened to spend the proceeds received from two workers' compensation settlements without reimbursing plaintiff for its payment of its medical expenses. As discussed above, plaintiff is likely to succeed on the merits against Repp. Moreover, considering Repp recovered $185,000 from these settlements and owes plaintiff $50,314.89, Repp will not be greatly harmed by an injunction placed on these funds for 10 days. Finally, allowing Repp to retain any traceable funds and be unjustly enriched would go against the public interest. As such, the balancing test favors granting the plaintiff's motion for a temporary restraining order as to Repp. Accordingly, plaintiff's motion for temporary restraining order is granted as to Repp.

### 5. Bond

Rule 65(c) provides that "[t]he court may issue . . . a temporary restraining order only if the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained." Fed. R. Civ. P. 65(c). Plaintiff argues that Repp will not suffer any cognizable harm during the time that the TRO is in effect because the motion only requires the preservation of the funds and retaining of records. It is difficult to assess the cost to Repp, as he did not attend the hearing. However, in order to account for any potential loss to Repp that could occur due to preserving the funds and records for 10 days, plaintiff shall post a bond of $100 with the Clerk's Office within 5 days of this order.

### B. Law Office of Jim Black

Defendant Black filed a response to plaintiff's motion and appeared at the hearing to make its arguments. Black contends that plaintiff does not have a better than negligible chance of succeeding on its ERISA claim against Black. Black argues that as a non-party to the ERISA plan it cannot be bound by the agreement.

In Trustees of the Central States, Southeast and Southwest Areas Health and Welfare Fund v. State Farm Mutual Automobile Insurances Co., the Seventh Circuit held that a non-party to a Plan cannot be held liable under § 502(a)(3) for a subrogation agreement unless that non-party specifically agrees to be bound by it. 17 F.3d 1081, 1084 (7th Cir. 1994). In that case, the court specifically held that an insurance company had no obligation to recognize a Fund's subrogation rights at the time of settlement with the Fund's covered individuals, and affirmed the district court's decision not to impose a constructive trust on the insurer. Id.

Plaintiff attempts to distinguish Central States by asserting that the Seventh Circuit did not address whether a plaintiff may enforce a permissible equitable remedy against a third party. However, the court disagrees that Central States did not involve equitable remedies. The Seventh Circuit specifically noted that the plaintiff in Central States was bringing an action pursuant to § 502(a)(3) of ERISA, and the plaintiff sought an injunction and a constructive trust, as well as "damages, costs and attorney fees." See id. at 1082 n.1-2. As discussed above, § 502(a)(3) only allows for equitable remedies. As such, when the court held that the plaintiff could not recover from the third-party defendant under ERISA, it implicitly held an equitable remedy was similarly unavailable. Id. at 1084. Moreover, the Court specifically stated that the district court "properly refused the Trustees' request for injunctive relief." Id. That being said, the Seventh Circuit has not specifically addressed whether, under other circumstances, an equitable remedy against an attorney of a plan beneficiary is permissible under § 502(a)(3).

Relying on Central States, another district court in this circuit has dismissed ERISA claims against the attorneys of plan participants, holding that a law firm may not be held liable for disbursing settlement funds despite the participant's subrogation agreement with the Plan. See Great-West Life Annuity Ins. Co. v. Hofmann, No. 01 C 2470, 2001 WL 914469, at *2 (N.D. Ill. Aug. 13, 2001); see also Great-West Life & Annuity Ins. Co.

v. Bullock, 202 F. Supp. 2d 461, 466 (E.D. N.C. 2002). The Ninth Circuit has similarly held that an action cannot be brought against a participant's attorney pursuant to § 502(a)(3). Hotel Emps. & Restaurant Emps. Int'l Union Welfare Fund v. Gentner, 50 F.3d 719, 721-22 (9th Cir. 1995). The Ninth Circuit found that it was appropriate to apply state law because although § 502(a)(3) does not require a professional or contractual relationship for a party to violate the terms of the plan, "it is well settled that when ERISA is silent on an issue, [the court] may turn to state law to fashion the appropriate federal common-law rule." Id. at 721. Applying this law, it found that "absent a specific statutory directive, a beneficiary's attorney is not bound to the terms of a client's subrogation agreement to which he is not a signatory" and as such, § 502(a)(3) did not apply to attorneys. Id. at 721.

In contrast, the Sixth Circuit has held that § 502(a)(3) contains "no statutory barrier that prevents [an attorney] from being a defendant in a suit brought pursuant to § 502(a)(3) of ERISA, provided that the relief sought lies in equity." Longaberger Co. v. Kolt, 586 F.3d 459, 468 (6th Cir. 2009). In Longaberger, as here, following settlement, the attorney disbursed the majority of the settlement funds from his IOLTA account, kept a portion for himself as an attorney fee, and disbursed a portion to his client, the plan participant. Id. at 462. The Sixth Circuit found that the fact that the participant's attorney chose to disregard the Plan's first priority lien and commingle the settlement funds does not defeat the Plan's claim for equitable relief, "because under Sereboff, [the Fund] was free to follow a portion of the settlement funds into the attorney's hands." Id. at 466. Thus, the Sixth Circuit allowed a claim against an attorney to proceed. Also relying in part on Sereboff, the Eleventh Circuit found that a third party could be a defendant in an action pursuant to § 502(a)(3), finding that the most important consideration is not the identity of the defendant, but rather that the settlement proceeds are still intact, and thus constitute an identifiable res that can be restored to its rightful recipient. Admin. Comm. for Wal-Mart Stores, Inc. Assocs.' Health and Welfare Plan v. Horton, 513 F.3d 1223, 1229 (11th Cir. 2008).

Plaintiff argues that Sereboff altered the law controlling the Seventh Circuit's decision in Central States. However, Sereboff did not address the issue of whether third parties could be liable under § 502(a)(3). Rather, it concerned claims against plan beneficiaries, parties who were bound by the plan terms. See AC Houston Lumber Co. Emp. Health Plan v. Berg, 407 F. App'x 208, 209 (9th Cir. 2010). That being said, the courts in both Longaberger and Horton rely on the Supreme Court's decision in Harris Trust & Savings Bank v. Salomon Smith Barney Inc., 530 U.S. 238, 249-50 (2000). The court finds this case more applicable to the instant issue. In Harris Trust, the Supreme Court considered whether § 503(a)(3) authorized a suit against a nonfiduciary "party in interest" to a transaction barred by § 406(a) of ERISA, 29 U.S.C. § 1106(a). In its analysis, the Court stated that the language of § 502(a)(3) "admits of no limit (aside from the 'appropriate equitable relief' caveat, which we address infra ) on the universe of possible defendants." Id. at 246. The court further noted that, unlike other provisions of ERISA that do expressly address who may be a defendant, §502(a)(3) makes no mention at all of which parties may be proper defendants and instead focuses on redressing the act or practice which violates any provision of ERISA. Id. Moreover, the Court reasoned that §502(l) contemplates civil penalty actions by the Secretary against two classes of defendants, fiduciaries and "other person[s]" and as such, "refutes the notion that § 502(a)(3) (or (a)(5)) liability hinges on whether the particular defendant labors under a duty expressly imposed by the substantive provisions of ERISA Title I." Id. at 248-49. Accordingly, it appears as if the decision in Harris Trust may effect the application of Central States.

That being said, the court need not make a decision as to whether Harris Trust gives plaintiff a better than negligible chance of succeeding on the merits against Black because plaintiff has failed to meet its burden to show that it will suffer irreparable harm if a temporary restraining order is not entered against Black at this time. "The requirement of irreparable harm is needed to take care of the case where although the ultimate relief that the plaintiff is seeking is equitable . . . he can easily wait till the end of trial to get that relief." Roland Machinery Co. v Dresser Indus., Inc., 749 F.2d 380, 386 (7th Cir. 1984). "Only if he will suffer irreparable harm in the interim-that is, harm that cannot be prevented or fully rectified by the final judgment after trial-can he get a

| STATEMENT |
|---|

preliminary injunction." Id.

Plaintiff has offered no evidence that Black has spent or intends to dissipate, dispose of, or hide the money it received as a result of Repp's settlement. Moreover, plaintiff waited almost a month to notice up its Motion for Temporary Restraining Order, demonstrating that there is little urgency by plaintiff to trace the money Black received. Without any other evidence that plaintiff will suffer irreparable harm if this motion is not granted, it has failed to meet its burden under Rule 65(a) as to a temporary restraining order. Accordingly, plaintiff's motion is denied as to Black.

### III. CONCLUSION

Plaintiff's motion for temporary restraining order is granted as to Repp, and denied as to the Law Offices of Jim Black. Repp is prohibited from transferring or spending or dissipating in any way from any funds received by Defendants from the settlement of the subject workers' compensation claims in the amount of $50,314.89 until the Motion for Preliminary Injunction is decided. Any funds received by Repp from the settlement of the subject worker's compensation claims shall be fully accounted for with true and accurate receipts and an immediate accounting provided by Repp to plaintiff. A hearing on plaintiff's motion for preliminary injunction will be conducted before the court on July 5, 2011, at 3:30 p.m.

---

1. This also addresses claims by the Law Office of Jim Black that plaintiff seeks legal and not equitable relief. Under Sereboff, the Supreme Court has found that plaintiff seeks equitable relief.